**Charles DUFF, Individually, and Judith Lee Hunts, Individually and as the Independent Administrator of the Estate of David Scott Duff, Appellants,**

v.

**Michael SPEARMAN, Innova Aircraft, Inc., and Innova Ventures, Inc., Appellees.**

No. 09–09–00282–CV.

Court of Appeals of Texas, Beaumont.

Submitted April 15, 2010.

Decided Sept. 9, 2010.

870

Steven D. Sanfelippo, Martin E. Rose, Kevin A. Koudelka, Rose Walker, L.L.P., Dallas, Carlton Bryan Cantrell, Lanny Ray, Cantrell, Ray, Maltsberger & Marcus, PLLC, Huntsville, for appellants.

Gary Linn Evans, George Andrew Coats, Coats & Evans, P.C., The Woodlands, W. Scott Golemon, Haas & Golemon, L.L.P., Conroe, for appellees.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

This appeal arises from an experimental-airplane crash that caused the deaths

of the airplane's pilot and passenger. We find no reversible error regarding the venue of the case. Although the trial court erred by refusing Charles Duff's request to withdraw a deemed admission, that error does not require a new trial. The trial court also erred in awarding taxable costs to Michael Spearman and Innova Aircraft, Inc. By entering a new judgment on the jury's verdict, these errors can be remedied on remand. Accordingly, we affirm the trial court's judgment as to Innova Ventures, Inc., we reverse the trial court's judgment decreeing that appellants take nothing against Michael Spearman and Innova Aircraft, Inc., and we remand the case to the trial court with instructions to recalculate the amounts the jury awarded to appellants, to enter findings on litigation costs, to recalculate the net awards to the appellants, and to award appellants their taxable costs against Michael Spearman and Innova Aircraft, Inc.

## Background Facts

Michael Spearman, a resident of Montgomery County, Texas, hired Turbine Design, Inc. to build an airplane referred to by the parties as the "TD2" or the "Spearman Raptor."[1] When the plane reached the test stage in the construction process, Spearman paid Mike Lumbert, a test pilot, to perform test flights of the TD2. Lumbert tested the TD2 for approximately thirty-four hours during the summer of 2004. In late July 2004, Lumbert advised Spearman that he felt the TD2 required additional testing, and he also advised Spearman that issues existed that made the TD2 "hazardous and/or unsafe which need further development[.]" Lumbert's July 2004 correspondence to Spearman concluded that "a sign off and release of the aircraft into Phase II[2] [was] inappropriate."

Approximately eight months later, Spearman asked Terry Willis,[3] a resident of Travis County, Texas, if he would fly the TD2 to Texas from Florida. During Spearman's telephone call with Willis, Spearman suggested that Willis talk with several people that had been involved in the TD2's development, examine the TD2, and "look over all the details[.]" After doing so, Willis was to decide whether to perform additional test flights, and after flying the plane, decide whether to obtain a ferry permit[4] or to sign the plane off into Phase II testing. Willis could then fly the plane to Texas.

On April 8, 2005, Willis, accompanied by David Duff,[5] and Charles Lawrence, an employee of Innova Aircraft,[6] travelled together by private plane to New Smyrna, Florida to talk to various individuals familiar with the TD2. Although both Willis and Duff were licensed pilots, Spearman expected Willis to pilot the TD2 in the event Willis decided to fly the plane to Texas.

1. For convenience, we refer to Spearman's plane as the "TD2."

2. Phase I is an initial test flight period for experimental aircraft. Under the Federal Aviation Administration ("FAA") regulations, the TD2 was required to be operated during Phase I testing within sixty miles of an airport in Deland, Florida. Successful completion of Phase I testing was necessary to remove the TD2's geographic restriction.

3. Willis was a licensed pilot who owned a plane built by Turbine Design known as the Turbine Legend. Spearman testified that Willis's experience with the Turbine Legend was a significant factor in his decision to allow Willis to fly the TD2.

4. A ferry permit is an FAA document that grants the FAA's permission for an aircraft to be flown outside its existing restrictions.

5. Duff was a licensed pilot and a Travis County resident.

6. Innova Aircraft, Inc. is an entity that Spearman created to complete the construction of the TD2.

On the day following their arrival in New Smyrna, Florida, Lawrence gave all of the TD2's test-flight documentation to Willis, including Lumbert's July 2004 correspondence that reflects Lumbert's concern over the TD2's operating characteristics. Following his initial test flight of the TD2, which occurred on April 9, Willis told Lawrence that he would complete the TD2's testing." On April 10, 2005, Willis, accompanied by Lawrence, flew the TD2 from New Smyrna to Deland, Florida, from Deland to Daytona, Florida, and then from Daytona back to New Smyrna. On April 11, Willis, accompanied by Lawrence, flew the TD2 from New Smyrna to Lakeland, Florida. According to Lawrence, none of the problems identified in Lumbert's July 2004 correspondence occurred during these flights. On April 12, 2005, Willis, accompanied by Duff, flew the plane from Lakeland to Daytona Beach, Florida. Before leaving the Daytona Beach airport on April 12, Willis showed Lawrence documents indicating that he had completed the TD2's Phase I testing.

Willis and Duff departed from the Daytona Beach airport on April 12. While approaching an airport near Bogalusa, Louisiana, Willis and Duff were killed when the TD2 crashed. Approximately one year later, Duff's parents, Charles Duff and Judith Hunts, along with Duff's estate (collectively referred to as "the appellants"), sued Michael Spearman in Travis County. Their suit alleged that venue was proper in Travis County because "all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Travis County[.]"

Spearman filed a motion to transfer venue of the case from Travis County to the county of his residence, Montgomery County. See Tex. Civ. Prac. & Rem.Code Ann. § 15.002(a)(2) (Vernon 2002). In his motion, Spearman asserted that all or a substantial part of the events giving rise to the appellants' claims had not occurred in Travis County. Specifically, Spearman asserted that no facts related to the crash occurred in Travis County, and he denied that he had misrepresented facts about the TD2 to either Willis or Duff. After a hearing, the trial court in Travis County transferred [7] the appellants' case to Montgomery County.

In November 2008, the trial judge conducted a jury trial. In its verdict, the jury awarded the Estate of David Duff damages of $15,000, awarded Judith Hunts damages of $975,000, and awarded Charles Duff damages of $303,000. The jury apportioned negligence between those it determined to have been negligent as follows: (1) Michael Spearman, 4%; (2) Charles Lawrence,[8] 4%; (3) John Cunningham,[9] 2%; (4) "Pilot in Command," [10] 70%; (5) Terry Willis,[11] for acts and omissions other than as "Pilot in Command," 10%; (6) David Duff, for acts and omissions other than as "Pilot in Command," 10%. Additionally, the jury answered "no" to a question asking whether Willis acted in the furtherance of a mission for Spearman's benefit. The trial court's judgment offset

---

7. The order transferring the case was signed March 9, 2006.

8. The jury, in response to issue number two, found that Lawrence had acted as an employee of Innova Aircraft, a named party to the suit.

9. The jury, in response to issue number three, found that Cunningham had acted as an employee of Innova Aircraft.

10. "Pilot in Command" was not a named party to the suit, nor did the trial court designate "Pilot in Command" as a responsible third-party defendant. See Tex. Civ. Prac. & Rem.Code Ann. § 33.004 (Vernon 2008).

11. Prior to the trial, the trial court designated Terry Willis as a responsible third party. See id.

the appellants' recovery against Spearman and Innova Aircraft with a settlement credit [12] and litigation costs.[13] The judgment then decrees that the appellants "recover nothing from Defendants Michael Spearman, Innova Aircraft, Inc.[,] and Innova Ventures, Inc.," and orders that "Defendants recover their taxable costs from Plaintiffs."

### Issues on Appeal

In five issues, the appellants challenge the trial court's judgment. In their first issue, the appellants argue that the Travis County trial court erred in transferring the lawsuit to Montgomery County. In issue two, the appellants assert that the trial court erred in admitting character evidence to show Willis's character as a bad pilot. In issue three, the appellants contend that based on the evidence, Willis acted as Spearman's agent as a matter of law. In issue four, the appellants argue the trial court erred when it refused to allow Charles Duff to withdraw an admission establishing that David Duff was the TD2's "Pilot in Command" at the time the TD2 crashed. In issue five, the appellants argue that as the prevailing party they were entitled to be awarded their taxable costs.

### *Venue*

The appellants argue that we should reverse the judgment in this case and order it transferred to Travis County because all or a substantial part of the events or omissions giving rise to the claim occurred there. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(a)(1). According to the appellants, the events or omissions that occurred in Travis County consisted of Spearman's phone calls with Willis before Willis went to Florida, and Spearman's e-mail to Willis in which Spearman asked Willis to fly the TD2 to Texas. Although it was not shown that Spearman was physically in Travis County when these events occurred, the appellants conclude that Spearman's misrepresentations, failures to warn, and concealment of material facts should all be considered as having occurred in Travis County. The appellants further argue that Spearman's spoliation of evidence supports a ruling that venue was proper in Travis County. Spearman's spoliation of evidence consisted of his failure to preserve data on three different computers.

[1–4] Under Texas law, the plaintiff is given the opportunity to file suit in any county of proper venue. *See Wilson v. Tex. Parks & Wildlife Dep't,* 886 S.W.2d 259, 260 (Tex.1994). It is reversible error to transfer the case to another county of proper venue, if the county the plaintiff initially chose is also a county of proper venue. *See id.* at 262. If there is any evidence of probative force to support venue in the county where the plaintiff initially filed suit, a trial court is required to deny the request to transfer venue, even if the evidence preponderates to the contrary. *See Bonham State Bank v. Beadle,*

---

12. Prior to trial, the appellants reached a settlement of $250,000 with The Spearman Group, also known as Spearman Real Estate Partnership, Porous Media, Ltd., and Porous Media Corporation. In their settlement, the appellants reserved their claims against Innova Aircraft, Innova Ventures, Inc., and Michael Spearman, individually and in his capacity as an employee and officer of Innova Aircraft and Innova Ventures.

13. A settlement offer complying with certain provisions of the Texas Rules of Civil Procedure or with certain provisions of the Texas Civil Practice and Remedies Code, if rejected, triggers statutory offset rights that allow the defendant to offset a plaintiff's recovery with its "litigation costs" when the judgment is significantly less favorable than the rejected settlement offer. *See* TEX R. CIV. P. 167.4; TEX CIV. PRAC. & REM.CODE ANN. § 42.004 (Vernon 2008).

907 S.W.2d 465, 471 (Tex.1995). If the county receiving the case proceeds to conduct a trial, we consider the entire record including the evidence from the trial on the merits in determining whether a transferring court improperly ordered a case transferred to another county. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex. 1993).

■ The appellants argue that Spearman's solicitation of Willis, together with Spearman's misrepresentations about the TD2 and his failure to disclose what he knew about the TD2, should all be considered as occurring in Travis County. But the appellants overlook the fact that they were required to show where Duff relied on Spearman's alleged misrepresentations. Justifiable reliance is an element of proof for claims involving concealment and for claims alleging misrepresentation. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 & n. 24 (Tex.2002); *McCamish v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex.1999) (citing RESTATEMENT (SECOND) OF TORTS § 552 (1977)); *see also Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991) (adopting the elements of section 552 of the RESTATEMENT (SECOND) OF TORTS for claims of negligent misrepresentation).

■ Here, with respect to flying the TD2, whatever Spearman disclosed or failed to disclose about the TD2 was relied upon by Willis in Florida. Additionally, it was undisputed that Willis knew the TD2 was an experimental airplane requiring additional testing. While statements that Spearman made to Willis while Willis was in Travis County might have played some role in Willis's decision to travel to Florida, his decision to fly the TD2 was based on what he learned about the TD2 when he

was in Florida. While in Florida, Willis talked to various people familiar with the TD2's characteristics and then flew the TD2 several times before attempting to fly the TD2 to Texas. Further, there is no evidence that Spearman had conversations with Duff in Travis County. Duff's decision to participate in returning the TD2 to Texas also occurred while Duff was in Florida. Having considered the entire record, we conclude that there is no probative evidence that a substantial part of the events or omissions giving rise to the appellants' claims occurred in Travis County.

■ Next, we consider the appellants' argument that Spearman's spoliation of evidence supplies venue facts sufficient to require the lawsuit to be returned to Travis County. "The doctrine of spoliation refers to the improper destruction of evidence relevant to a case." *Buckeye Ret. Co. v. Bank of Am., N.A.*, 239 S.W.3d 394, 401 (Tex.App.-Dallas 2007, no pet.). If a trial court determines that a party has failed to preserve documents that it is on notice to preserve, the trial court may take affirmative measures to correct the effects of the spoliation. *Trevino v. Ortega*, 969 S.W.2d 950, 953 (Tex.1998); *see also Buckeye*, 239 S.W.3d at 401. The affirmative measures can range "from a jury instruction on the spoliation presumption to, in the most egregious case, death penalty sanctions." *Trevino*, 969 S.W.2d at 953. Faced with an abuse of the discovery process, trial courts are given significant discretion in deciding whether to impose an appropriate sanction. TEX.R. CIV. P. 215.3.

At trial, the trial court gave the jury an instruction on Spearman's spoliation of evidence.[14] However, the appellants never asked the trial court to sanction Spearman

---

**14.** The trial court's instruction states: "The Court has found that the defendant Michael Spearman failed to preserve certain computer information and data that was material and relevant to pending litigation. You may presume that such information and data would have been unfavorable to defendant Michael Spearman."

for his failure to preserve evidence by returning the case to Travis County, nor did the appellants object at the charge conference that the proposed jury instruction on spoliation was an insufficient sanction. Additionally, while the appellants' motion for sanctions argued that the information Spearman failed to preserve was "critical to the determination of whether venue was proper[,]" the appellants' motion and supplemental motion for sanctions did not request the Montgomery County trial court to return the case to Travis County. Further, the appellants never asked the trial court to find that Spearman's spoliation of evidence warranted findings of venue facts sufficient to establish venue in Travis County. Instead, the appellants' motion for sanctions requests the trial court to give the jury a spoliation instruction, which it gave. The spoliation instruction the appellants requested does not inform the trial court that the appellants also desired to sanction Spearman by deeming venue facts as having been established.

▬▬ As the *Trevino* court made clear, "there is no one remedy that is appropriate for every incidence of spoliation; the trial court must respond appropriately based upon the particular facts of each individual case." *Trevino*, 969 S.W.2d at 953. The trial court, in remedying discovery abuse, has the right to determine in the first instance whether to deem facts as being established in determining an appropriate sanction for discovery misconduct. *See* Tex.R. Civ. P. 215.2(b)(3) (allowing a trial court's sanction to include

that a matter shall be taken as having been established). Even if a venue finding is an appropriate sanction for discovery misconduct, a matter we need not decide, such a remedy was not first requested of the trial court here. *See Trevino*, 969 S.W.2d at 953; *see also* Tex.R.App. P. 33.1 (preserving error for appellate review requires the complaining party to show that he presented his complaint to the trial court in a timely request, objection, or motion and that the trial court ruled on the request). Because the appellants did not first ask the trial court for the sanction they now ask for, Spearman's spoliation of evidence, their argument is not preserved for appellate review. *See* Tex.R.App. P. 33.1(a)(1). We overrule issue one.

## Character Evidence

In their second issue, the appellants complain the trial court erred by admitting evidence that Willis "had flown airplanes negligently in the past." In their brief, the appellants point to testimony elicited from John Cunningham, John Cook, Dan Gray, Sven Hendrickson, Steven Jackson, and Michael Spearman. The appellants argue that Rule 404(a) of the Texas Rules of Evidence prohibits the admission of testimony of a person's character traits to prove that the person acted in conformity with them. *See* Tex.R. Evid. 404(a).[15] They further argue that Rule 404(b) prohibits the admission of testimony about Willis's other wrongs or acts because the testimony was used to show that Willis acted in the same manner at the time of the crash. Tex.R. Evid. 404(b).[16] Spear-

---

15. Rule 404(a) provides: "Evidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: [listing two exceptions that are not relevant to this appeal]." Tex.R. Evid. 404(a).

16. Rule 404(b) provides: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Tex R. Evid. 404(b).

man responds that the evidence about which appellants complain was relevant and admissible "to demonstrate Duff's negligence in electing to fly with Willis on the accident flight[.]"

■ We conclude that the appellants have failed to preserve the complaints they make in issue two for our review. To preserve error for purposes of appellate review, the Rules of Appellate Procedure require parties to make timely and specific objections at the earliest possible opportunity to preserve complaints that relate to a trial court's admission of evidence during a trial. TEX.R.APP. P. 33.1; *Oyster Creek Fin. Corp. v. Richwood Investments II, Inc.*, 176 S.W.3d 307, 316 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (failing to object operated as waiver of complaint that trial court erroneously admitted evidence of prior crime); *Schwartz v. Forest Pharm., Inc.*, 127 S.W.3d 118, 123–24 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (failing to timely object to testimony about the plaintiff's litigious character waived right to complain on appeal of the trial court's admission of the testimony). The record references the appellants provide in their brief concerning the admission of character evidence reflect that the appellants lodged no objections when the testimony about which they now complain was elicited during trial. Nor did the appellants object when various witnesses attested to their respective opinions of Willis's character as a pilot.

By failing to lodge objections when these witnesses testified, the appellants failed to preserve their complaints concerning the admission of testimony about Willis's character as a pilot. TEX.R.APP. P. 33.1. We overrule issue two.

*Agency*

The first question the trial court gave the jury asked: "Was Terry Willis acting in the furtherance of a mission for the benefit of Michael Spearman and subject to control by Michael Spearman as to the details and means of the mission?" [17] The jury responded, "No." In issue three, the appellants argue that the evidence conclusively establishes that Willis acted as Spearman's agent. Additionally, the appellants contend that their evidence conclusively establishes that Willis was on a mission for Spearman.

■ First, we note the general rule regarding agency under Texas law. "Texas law does not presume agency, and the party who alleges it has the burden of proving it." *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex.2007) (citing *Buchoz v. Klein*, 143 Tex. 284, 184 S.W.2d 271 (1944)). When challenging the legal sufficiency of the evidence supporting an issue on which the appellant has the burden of proof, the appellant is required to "demonstrate on appeal that the evidence [conclusively] establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (per curiam). A legal sufficiency review of a no-evidence point must credit favorable evidence if a reasonable fact-finder could and disregard the contrary evidence unless a reasonable fact-finder could not disregard it. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex.2005). A reviewing court will sustain a no-evidence point when: (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital

---

**17.** The question submitted to the jury tracks the issue suggested in the TEXAS PATTERN JURY CHARGES, section 7.10. *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES P.J.C. 7.10 (2008). Section 7.10 explains that it is used "if the respondeat superior doctrine is raised in a case not involving an ordinary employee." *Id.* at 7.10 cmt.

fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003).

Relying on definitions contained in title 14, section 1.1 of the Code of Federal Regulations,[18] the appellants argue that Spearman was the "operator" of the April 12, 2005 flight. Additionally, the appellants point to evidence in the record showing that Spearman (1) assigned Willis the task of flying the TD2, (2) directed that the TD2 be flown to Texas, (3) employed the persons responsible for maintaining the TD2, (4) transported Willis to Florida, (5) provided fuel for the flight, (6) controlled the information regarding the TD2 that Willis obtained before the TD2's final flight, and (7) asked Willis to certify the airworthiness of the TD2 before its final flight. The appellants further argue the evidence established that Spearman retained the right to limit Willis's actions as those actions related to the TD2. The appellants also note that Spearman retained the right to control Willis's actions, even if Spearman did not "actually exercise[ ] that right." In discussing the evidence from the trial, the appellants point to Spearman's testimony in which he acknowledges that Willis was to do "only what I told him to do." Finally, the appellants contend that only Spearman stood to benefit from relocating the TD2 to Texas.

In response, Spearman does not contend that Willis was not on a mission for his benefit. Instead, Spearman argues that he did not control "the details and means

of the mission." *See Am. Nat'l Ins. Co. v. Denke*, 128 Tex. 229, 95 S.W.2d 370, 373–74 (1936) (overturning judgment against a principal where the injury from an automobile accident had been caused by an agent who was not under the principal's control at the time of the accident). Spearman disputes that he had control over Willis as to numerous details that were involved in Willis's final flight. Spearman points to evidence showing that he left to Willis the decision on whether to return the TD2 to Texas. Spearman explained to the jury that during a flight, it was up to the pilot to decide what happened. Specifically, Spearman contends the evidence showed the he did not control where the aircraft was to be flown, the route of the flight, how the aircraft was to be flown, the amount of fuel loaded on the plane, where the TD2 was to stop to refuel, or whether Willis allowed Duff to fly as a passenger.

Spearman further argues that the appellants' expert aircraft accident investigator, Warren Wandel, agreed that there was no evidence that Spearman had directed the details of the TD2's final flight. Spearman notes that Wandel, in addressing the TD2's final flight, testified that Willis (1) served as the plane's "Pilot in Command," (2) determined the route for the flight, (3) decided where to stop to refuel, (4) decided the date and time of the plane's departure, and (5) selected Austin as the plane's destination.

To determine whether the doctrine of respondeat superior applies to an agency relationship, juries are asked to determine whether the agent was on a

18. The trial court admitted as an exhibit a copy of title 14 of the Code of Federal Regulations, current as of September 11, 2007. It provides a number of general definitions relevant to piloting planes, including a definition of the term "operate." Under section 1.1, title 14, *"Operate,* with respect to aircraft, means use, cause to use or authorize to use

aircraft, for the purpose (except as provided in § 91.13 of this chapter) of air navigation including the piloting of aircraft, with or without the right of legal control (as owner, lessee, or otherwise). *Operational control,* with respect to a flight, means the exercise of authority over initiating, conducting or terminating a flight." 14 C.F.R. § 1.1 (2007).

mission for the principal and whether the agent was subject to the principal's control with respect to the details of the mission. *See English v. Dhane,* 156 Tex. 231, 294 S.W.2d 709, 711 (1956) (holding that the car's owner was not responsible for negligence of the agent driving the car absent the owner's control over the agent's operation of the car at the time in question); *see also* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES P.C.J. 7.10 (2008) ("**Respondeat Superior—Nonemployee** .... On the occasion in question, was *Tim Thomas* operating the vehicle in the furtherance of a mission for the benefit of *Don Davis* and subject to control by *Don Davis* as to the details of the mission?").

■■■ Vicarious liability does not impose liability on the principal solely because an agent is on the principal's mission. *See Denke,* 95 S.W.2d at 373. Recognizing that vicarious liability is a judicially created remedy, the Texas Supreme Court has emphasized that limitations exist on the doctrine's reach. *St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 541 (Tex.2002) (expressly recognizing a number of factors affecting "whether and when vicarious liability is appropriate"). In *Wolff,* the Texas Supreme Court explained that the paramount factor used in determining whether to impose vicarious liability on a party is "whether the person being held responsible can be said to have had a right to control the activities of the wrongdoer." *Id.*

■■■ In the employment context, a written contract provision providing a right to the employer to control certain employees does not alone control the jury's decision on whether the employer had the necessary right of control when there is

evidence showing otherwise. *See Exxon Corp. v. Perez,* 842 S.W.2d 629, 630 (Tex. 1992) (per curiam) ("Where the right of control prescribed or retained over an employee is a controverted issue, it is a proper function for the fact-finder to consider what the contract contemplated or whether it was even enforced."). Whether Spearman exercised or had the right to control Willis was an issue on which the jury heard conflicting evidence. Much of the evidence reflects that Spearman did not control the details of Willis's decisions regarding the TD2's final flight. Although the Texas Supreme Court has recognized that an airplane's co-owner riding in the plane's passenger seat might have a joint right of control with the co-owner pilot over the plane, Spearman, the plane's owner, was not present during any of the TD2's flights. *See Shoemaker v. Estate of Whistler,* 513 S.W.2d 10, 15 (Tex.1974) (explaining that although the person in the pilot's seat had "superior command" of the plane, the co-owner, who was also in the plane, had the right to be heard regarding the flight based upon his ownership interest in the plane).

Having carefully reviewed the evidence, we conclude that the evidence does not establish as a matter of law that Spearman exercised control over the means and details of Willis's mission. As a result, the trial court did not err by overruling the appellants' motion for directed verdict and their motion for judgment notwithstanding the verdict. We overrule issue three.

*Deemed Admission*

In issue four, the appellants argue the trial court abused its discretion by refusing Charles Duff's request to withdraw a deemed admission.[19] Spearman served

---

**19.** The request in issue, request for admission two, states: "Admit that [David] Duff was the pilot-in-command of the Aircraft during the Accident flight." Charles Duff's responses, filed one day late, contained this objection, "Plaintiffs object to Request for Admission No. 2 to the extent that it uses terms that are

Charles Duff with discovery that contained eight requests for admissions. Duff was one day late in responding to Spearman's discovery request. By operation of Rule 198.2(c) of the Texas Rules of Civil Procedure, Charles Duff admitted Spearman's requests.[20] Rule 198.2(c) provides: "If a response is not timely served, the request is considered admitted without the necessity of a court order." Tex.R. Civ. P. 198.2(c).

On October 24, 2006, Charles Duff moved to withdraw his deemed admissions. On December 4, 2006, the trial court partially granted and partially denied Charles Duff's request to withdraw his deemed admissions. The trial court refused to allow Duff to withdraw his admission that David Duff had served as the TD2's "Pilot in Command," as well as three of his other deemed admissions. However, in the same order, the trial court granted Charles Duff's request to withdraw some of his deemed admissions.

The record contains no findings of fact or conclusions of law to explain the reasons the trial court allowed Charles Duff to withdraw some of his deemed admissions but not others. On December 13, 2006, Charles Duff asked the trial court to reconsider its ruling and to allow him to withdraw the remaining deemed admissions. On October 16, 2008, the trial court heard Charles Duff's motion to reconsider. During the hearing, a paralegal employed by the firm representing Charles Duff explained that she had mistakenly calculated the date Spearman's requests for admissions were due. As a result, Duff's re-sponses were filed one day late. At the conclusion of her testimony, the trial court said:

> From [the paralegal's] point of view, I'll say to her, as a paralegal and individual, my ruling had nothing to do with her mis-calendaring. It had everything to do with Counsel's gamesmanship that was being played early on, including in these responses. That's the purpose of my ruling. You got a record. Y'all go mediate.
>
> . . . .
>
> Motion denied.

The record before us does not support the conclusion that Duff had engaged in discovery abuse. As of the date the trial court denied Charles Duff's request to withdraw his deemed admissions, the clerk's record reflects that Spearman had never complained that Charles Duff's responses to discovery were inadequate. As of the date Charles Duff answered Spearman's requests for admissions, the clerk's record reveals that Spearman had not filed any motions to compel discovery. Duff's response to Spearman's request for admissions is neither ambiguous nor evasive, as Duff expressly entered an unqualified denial to the request now in issue. Further, we find nothing in the record to indicate that the trial court attempted any lesser sanction against the attorneys for engaging in whatever conduct the trial court viewed as "gamesmanship" before it made a ruling affecting a party's right to have a material issue resolved by the jury. *See TransAmerican Nat'l Gas Corp. v.*

---

undefined, vague and ambiguous." Nevertheless, on the same date and in the same document, Charles Duff then responded to the request, answering: "Denied."

**20.** The certificate of service on Spearman's discovery containing the request at issue reflects that the request was served by certified mail on May 18, 2006. By virtue of the "mailbox rule," Charles Duff was required to respond to Spearman's request by June 20, 2006. *See* Tex.R. Civ. P. 21a. According to Charles Duff's certificate of service that accompanied his discovery responses, he filed his response on June 21, 2006, or one day later than the period allowed under the Rules of Civil Procedure.

*Powell*, 811 S.W.2d 913, 917–18 (Tex.1991) (suggesting that trial courts should first consider lesser sanctions and that "just sanctions must not be excessive" and "the punishment should fit the crime").

The parties tried the case to the jury over the course of three weeks in November 2008. During the trial, the jury was never informed that Charles Duff admitted that David Duff had served as the TD2's "Pilot in Command." Various expert witnesses for both sides expressed their opinions that on the TD2's final flight, Willis had served as the "Pilot in Command." Additionally, no witness testified during the trial that David Duff had been the "Pilot in Command" of the TD2's final flight. In their closing arguments, the attorneys for both sides argued to the jury that Willis had been the TD2's "Pilot in Command" during its final flight.[21]

Shortly before the parties rested, the trial court conducted a charge conference. During the charge conference, Duff again requested permission to withdraw the deemed admission now in issue, and his attorneys pointed out that the jury had been presented evidence proving that Willis served as the TD2's "Pilot in Command." Nevertheless, the trial court again refused Duff's request to withdraw the deemed admission.

Because Duff's admission affected only his case, and not that of Judith Hunts' or the Estate of Duff's, the trial court decided to charge the jury by asking it to return findings on negligence as to Michael Spearman, Charles Lawrence,[22] John Cunningham,[23] "Pilot in Command," [24] Terry Willis,[25] and David Duff.[26] The jury was

---

**21.** In final argument, Spearman's attorney argued: "Per the Court's definition—and this is right out of the Federal Aviation Regulations—'the pilot-in-command means the person who has final authority and responsibility for the operation and safety of the flight, has been designated as pilot-in-command before or during the flight, and holds the appropriate category, class, and type rating, if appropriate, for the conduct of the flight.' And we all know, there's not been any evidence to the contrary that Mr. Willis was the pilot-in-command of the airplane."

**22.** With respect to Lawrence, the charge instructed the jury that, "for purposes of this subsection, do not consider acts or omissions, if any, of Charles Lawrence while he was employed by Turbine Design[.]" Because Turbine Design had settled before trial, and Lawrence, before working for Innova Aircraft, had been Turbine Design's employee, we assume that this instruction was intended to focus the jury on Lawrence's conduct after he left his employment with Turbine Design. The appellants did not object to any of the instructions that accompanied this question.

**23.** With respect to Cunningham, the charge also instructed that, "for purposes of this subsection, do not consider acts or omissions, if any, of John Cunningham while he was employed by Turbine Design[.]" We assume this instruction was intended to focus the jury on

Cunningham's conduct that occurred after he left Turbine Design's employment.

**24.** With respect to "Pilot in Command," the charge instructed that, "for purposes of this subsection, consider only acts or omissions, if any, of the Pilot in Command of the flight from Daytona to Bogalusa[.]" We assume that the trial court gave the jury this instruction to allocate the findings of fault in a manner consistent with its prior decision to preserve its ruling as to Charles Duff's deemed admission. The appellants did not object to this language of the charge during the charge conference.

**25.** With respect to Willis, the charge instructed that, "for purposes of this subsection, do not consider acts or omissions of Terry Willis, if any, as the Pilot In Command of the flight from Daytona to Bogalusa[.]" We assume this instruction was included for reasons we explain in footnote 24. The appellants did not object to this language during the charge conference.

**26.** With respect to David Duff, the charge instructed that, "for purposes of this subsection, do not consider acts or omissions of David Duff, if any, as the Pilot In Command of the flight from Daytona to Bogalusa[.]" We assume this instruction was included for

then asked to determine the percentages of negligence attributable to each person that it determined to have been negligent. During the charge conference, the appellants informed the court that they had no objection to the court's proposed apportionment issue.

While the jury deliberated, the trial court obtained an important stipulation from the parties regarding the possible appeal of its submitting the negligence of the "Pilot in Command." The attorneys for all parties stipulated that in the event the jury apportioned fault to the TD2's "Pilot in Command," the percentage apportioned to the "Pilot in Command" would be attributed to Willis in determining the judgment with respect to the claims of the Estate of Duff and Judith Hunts.[27] The parties further stipulated that if a reviewing court later determined the trial court erred by refusing to allow Charles Duff to withdraw his admission, the fault the jury attributed to "Pilot in Command" would then, with respect to Charles Duff's claim, be attributed to Willis.

Later that day, the jury returned its verdict. Based on the questions submitted to it, the jury attributed negligence to each of the persons about whom the charge inquired, including the TD2's "Pilot in Command." In apportioning negligence, the jury attributed the negligence between these persons as follows: Spearman, 4%; Lawrence, 4%; Cunningham, 2%; "Pilot in Command," 70%; Willis, 10%; and Duff, 10%. The jury also found that Lawrence and Cunningham had acted as employees of Innova Aircraft, and further found that

Spearman was "responsible for the conduct of Innova Aircraft, Inc." [28]

In its answer to a question on damages, the jury awarded Charles Duff $303,000; awarded Judith Hunts $975,000; and awarded the Estate of Duff $15,000. Prior to the trial, Spearman had extended a settlement offer that later proved to be substantially more favorable to the appellants than the amounts awarded to them by the jury. See TEX.R. CIV. P. 167; TEX. CIV. PRAC. & REM.CODE ANN. §§ 42.001–.005 (Vernon 2008). After trial, and because the settlement offer triggered their right to receive litigation costs as an offset to the jury's award, the appellees sought a post-trial offset under Rule 167. Spearman submitted an affidavit to support a claim for attorneys' fees, and requested the trial court to offset the amounts the jury had awarded with his litigation costs. See TEX.R. CIV. P. 167. In March 2009, the trial court rendered a judgment decreeing that Charles Duff, Edith Hunts, and the Estate of Duff recover nothing against the defendants, Michael Spearman, Innova Aircraft, and Innova Ventures. The trial court's judgment also decrees that the appellees are entitled to recover their taxable costs. The trial court's judgment recites that the court finds that the appellees are "entitled to reductions, offsets and credits under Texas Civil Practices and Remedies Code Chapter 33, as well as Texas Civil Practices and Remedies Code Chapter 42 (TRCP 167)[.]" However, the judgment is silent regarding the amount of the settlement credit or the litigation costs offset the trial court allowed in calculating the appellants' net award.

the same reasons we explain in footnote 24. The appellants did not object to this language during the charge conference.

27. This stipulation allowed the trial court to allocate the negligence finding on "Pilot in Command" to David Duff, Charles Duff's son, based on Charles Duff's deemed admission.

28. We express no opinion regarding whether the trial court's judgment properly made Spearman, in his individual capacity, responsible for the conduct of employees of Innova Aircraft, as the appellees have not raised any issues by cross-point in the appeal. Therefore, that issue is not before us.

Given this background, we address whether the trial court erred by failing to grant Charles Duff's request to withdraw the deemed admission in dispute. By allowing Charles Duff to withdraw the majority of his deemed admissions, and given the trial court's comments to the paralegal during the hearing, it is apparent that the trial court accepted the paralegal's explanation as having established "good cause." *See* TEX.R. CIV. P. 198.3(a) (requiring a party show "good cause" to withdraw deemed admission). "Good cause is established by showing the failure involved was an accident or mistake, not intentional or the result of conscious indifference." *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex.2005). Since the trial court accepted the paralegal's explanation, its decision to deny Charles Duff's request to withdraw the single admission now in dispute was not based on Duff's failure to establish that his late filing was a mistake.

Additionally, the trial court did not suggest that Duff's delay of one day had prejudiced Spearman's ability to present his side of the case. *See* TEX.R. CIV. P. 198.3(b). "Undue prejudice depends on whether withdrawing an admission or filing a late response will delay trial or significantly hamper the opposing party's ability to prepare for it." *Id.* at 443. Duff's failure to timely respond to discovery occurred at an early stage in the proceedings, and well before the close of the discovery period allowed by the trial court's pre-trial order. The record does not support a finding of undue prejudice.

None of the parties including Spearman, utilized Duff's deemed admission when presenting their respective claims to the jury. *See* TEX.R. CIV. P. 198.3 ("A matter admitted under this rule is conclusively established as to the party making the admission. . . ."). We conclude that Spearman would not have suffered undue prejudice had the trial court granted Charles Duff's motion to withdraw Duff's deemed admission that concerned David Duff having piloted the TD2.

To withdraw a deemed admission, Rule 198.3 also requires a finding that the merits of the action are served by allowing the admission to be withdrawn. *See* TEX.R. CIV. P. 198.3(b). Because the parties did not rely on the admission in presenting their evidence, it appears the parties recognized that presenting evidence concerning who had piloted the TD2 would assist the jury in resolving the disputed issues. A party that, without objection, allows the trial court to admit evidence controverting a matter deemed admitted may waive his right to rely upon the matter. *See Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989) (holding that the plaintiff "waived . . . his right to rely upon those admissions which were controverted by testimony admitted at trial without objection"). The appellants' attorneys, during the charge conference, argued that Spearman had waived his right to rely on the admission by introducing evidence that Willis piloted the TD2.

We conclude that by introducing evidence that Willis piloted the TD2, Spearman waived his reliance on Charles Duff's deemed admission that David Duff had piloted the TD2. *See id.* To the extent there is an implied finding that Spearman did not waive his right to rely on the admission, such an implied finding is contrary to the great weight and preponderance of the evidence. *See id.* We further conclude that any implied finding that the merits of the case would not be served by allowing Charles Duff to withdraw the admission is against the greater weight and preponderance of the evidence. *See id.*

Next, we address whether the trial court's ruling can be upheld as a discovery sanction for counsel's "gamesmanship." Although Charles Duff filed his responses to the requests one day late, he did not

simply object and then refuse to respond to Spearman's request. Instead, subject only to his objections, he unequivocally denied that David Duff had piloted the plane. The way in which Duff responded to the requests did not justify a sanction.

■■■■■ A trial court's discretion in deeming a request to have been admitted is limited by due process. *Wheeler*, 157 S.W.3d at 443. "When requests for admissions are used as intended—addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents—deeming admissions by default is unlikely to compromise presentation of the merits." *Id.* (citation omitted). Nevertheless, "[d]ue process concerns arise when a party uses deemed admissions to preclude presentation of the merits of a case." *Thomas v. Select Portfolio Servicing, Inc.*, 293 S.W.3d 316, 320 (Tex. App.-Beaumont 2009, no pet.) (citing *Wheeler*, 157 S.W.3d at 443).

Here, the trial court stated that its ruling "had nothing to do with [the paralegal's] mis-calendaring[,]" and then alluded to the appellants' attorneys' handling of discovery by stating that the court's ruling "had everything to do with Counsel's gamesmanship." With respect to Charles Duff's claim, Charles Duff's admission that David Duff had served as the "Pilot in Command" defeated his recovery. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon 2008) (barring a claimant's recovery if his percentage of responsibility is greater than fifty percent); *Utts v. Short*, 81 S.W.3d 822, 832 (Tex.2002) ("[W]hen a suit involves derivative claims, the derivative plaintiff cannot recover if the injured or deceased person's negligence is greater than fifty percent."). In summary, had the trial court allowed the admission to be withdrawn, Charles Duff's recovery before litigation costs are offset, would equal ten percent [29] of his damages. As the deemed admission was applied by the trial court, Charles Duff lost the judgment despite winning the jury's verdict.

In *Wheeler*, the Texas Supreme Court warned that "absent flagrant bad faith or callous disregard for the rules, due process bars merits-preclusive sanctions[.]" *Wheeler*, 157 S.W.3d at 443. At the point the trial court imposed the sanction, Spearman's attorneys had made no effort to obtain less extensive sanctions, nor is there any indication in the record that the trial court considered imposing sanctions against Charles Duff's attorneys for engaging in whatever conduct the trial court viewed as having been inappropriate. *See TransAmerican Natural Gas Corp.*, 811 S.W.2d at 917–18 (holding that a sanction must not be excessive and must fit the crime). Here, Charles Duff filed a full response to the admission in dispute, and he unequivocally denied Spearman's request one day after the requests were due under the Texas Rules of Civil Procedure. Having carefully reviewed the record, we find nothing to support an implied finding that the appellants' attorneys or Charles Duff's response was made in bad faith or with callous disregard for the rules. Moreover, Charles Duff's response to the admission is consistent with the evidence later introduced by both parties at trial. Because the record does not support a sanction affecting the merits of Charles Duff's case, we conclude the trial court did not have the discretion to impose a merits-preclusive sanction. We further conclude that the trial court's refusal to allow

---

**29.** The jury apportioned Spearman's individual responsibility at 4%, Lawrence's at 4%, and Cunningham's at 2%. The jury then determined that Lawrence and Cunningham had acted as employees of Innova Aircraft. The jury also found that Spearman was responsible for the acts and omissions of Innova Aircraft, and Spearman has not appealed this finding.

Charles Duff to withdraw the deemed admission in dispute constitutes an abuse of discretion.

In their brief, the appellants suggest they were harmed by the trial court's ruling because the admission precluded the jury from deciding who was the "pilot-in-command of the [TD2] at the time of the accident." However, we do not agree that the jury's verdict was affected by Duff's deemed admission. First, the trial court and the parties never informed the jury of Charles Duff's admission. Second, the witnesses at trial who addressed the identity of the person serving as the TD2's pilot during the plane's final flight identified Willis as having been the TD2's "Pilot in Command." Third, after the crash, Willis was found in the TD2's front seat, which was the seat typically used by the TD2's pilot. Finally, during the jury's deliberations, all of the parties stipulated that if the trial court was found to have erred in denying Charles Duff permission to withdraw the deemed admission in issue, the "Pilot in Command's" negligence would be attributed to Willis. Based on the record, as well as the parties' stipulation, we conclude the trial court's error had no effect on the result reached by the jury.

Nevertheless, the trial court's use of the admission affected the final judgment. In light of the parties' stipulation to allocate the negligence of the "Pilot in Command" to Willis, we hold that the judgment can be corrected by the trial court. Therefore, we affirm the jury's verdict and the jury's findings, but we reverse the judgment because the trial court failed to calculate the judgment properly. We remand the judgment to the trial court to allow it to recalculate the judgment by allocating the

jury's finding on the negligence of the "Pilot in Command" to Willis.

When the trial court recalculates the judgment, based on the percentage of negligence findings by the jury, we note for the trial court's benefit that Spearman and Innova Aircraft are not jointly liable. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.013(b) (Vernon 2008) (providing for joint and several liability if a defendant found more than fifty percent responsible). Therefore, the trial court's calculation of the jury's award is to be determined by multiplying the damage awarded each appellant by the fault the jury apportioned to each appellee. *See Roberts v. Williamson,* 111 S.W.3d 113, 123 (Tex.2003) (explaining under circumstances similar to these, that a jury award against a severally-liable defendant is not generally offset by a settlement credit in the absence of a recovery exceeding the one-satisfaction rule); *C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 321 (Tex.1994), *abrogated on other grounds by Battaglia v. Alexander,* 177 S.W.3d 893, 900 (Tex.2005) ("Section 33.013(a) sets the liability to the claimant of each [severally liable] defendant at an amount equal to that defendant's percentage of responsibility multiplied by the damages found by the trier of fact.").

After determining the amount the jury awarded each of the appellants, the trial court must then calculate the amount of the litigation costs to award appellees, and then offset the jury's award the appellants with the appellees' litigation costs. *See* TEX.R. CIV. P. 167.4(d)-(g) (providing limitations on the litigation costs offset), TEX. CIV. PRAC. & REM.CODE ANN. § 42.004 (Vernon 2008) (providing that the offering party may recover "litigation costs"[30] if the award is less than eighty percent of the

---

**30.** As provided by Rule 167.4(c) of the Texas Rules of Civil Procedure:

Litigation costs are the expenditures actually made and the obligations actually

incurred-directly in relation to the claims covered by a settlement offer under this rule-for the following:
(1) court costs;

rejected offer). In this case, the amount the trial court determined as the appellees' permissible "litigation costs" is not known, as the offset amount is not contained within the trial court's judgment, nor is the amount the trial court determined to be "litigation costs" found elsewhere in the record. While we do find evidence in the record that the appellees incurred "litigation costs" of $151,454.00, we find nothing to indicate the trial court awarded the entire amount claimed as the offset amount.

As a reviewing court, we are unable to make original findings of fact in the first instance. *See generally Tex. Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex.1986). Therefore, we are unable to render an initial award of litigation costs. On remand, the trial court must determine the offset amount based on the evidence before it to determine the net amounts to be awarded each appellant in the trial court's judgment. *See* Tex.R. Civ. P. 167.4(c), (d). Without the benefit of findings on the proper offset award in the first instance, we are without authority to reform the trial court's judgment.

In summary, we hold the trial court erred in utilizing a deemed admission in calculating the judgment. Because the trial court's error did not affect the jury's verdict, we hold the proper remedy is to remand the case to the trial court to allow the trial court to reconsider the net amounts due to each of the appellants.

## Taxable Costs

In issue five, the appellants assert the trial court erred by taxing them with costs of court. Rule 131 of the Texas Rules of Civil Procedure provides that the successful party is to be awarded "all costs incurred therein, except where otherwise provided." Tex.R. Civ. P. 131.

■ Both parties ask that we address whether Rule 167.4's offset provision affects the determination of which side is considered as "successful" for purposes of taxing costs under Rule 131. In a case that involves an award that includes both noneconomic and economic damages, Rule 167.4(d) applies a formula that caps the maximum amount the trial court can award as an offset to a sum that will always be lower than the jury's award. *See* Tex.R. Civ. P. 131, 167.4(d) (providing that the litigation costs offset cannot exceed the sum of noneconomic damages and one-half of the economic damages).[31]

---

(2) reasonable fees for not more than two testifying expert witnesses; and
(3) reasonable attorney fees.

**31.** Rule 167.4 of the Texas Rules of Civil Procedure provides:

(a) *Generally.* If a settlement offer made under this rule is rejected, and the judgment to be awarded on the monetary claims covered by the offer is significantly less favorable to the offeree than was the offer, the court must award the offeror litigation costs against the offeree from the time the offer was rejected to the time of judgment.
(b) *"Significantly less favorable" defined.* A judgment award on monetary claims is significantly less favorable than an offer to settle those claims if:

(1) the offeree is a claimant and the judgment would be less than 80 percent of the offer; or
(2) the offeree is a defendant and the judgment would be more than 120 percent of the offer.

(c) *Litigation costs.* Litigation costs are the expenditures actually made and the obligations actually incurred—directly in relation to the claims covered by a settlement offer under this rule—for the following:

(1) court costs;
(2) reasonable fees for not more than two testifying expert witnesses; and
(3) reasonable attorney fees.

(d) *Limits on litigation costs.* The litigation costs that may be awarded under this rule must not exceed the following amount:

(1) the sum of the noneconomic damages, the exemplary or additional dam-

Thus, when the formula contained in rule 167.4 is applied to the jury's award in the matter before us, the appellants will be the successful parties for purposes of being awarded court costs under Rule 131. *See* TEX.R. CIV. P. 131. Because the jury's award in this case includes both noneconomic and economic damages, the appellants will be the prevailing party for purposes of taxing court costs.[32] On remand, regardless of the amount of litigation costs the trial court finds to be reasonable, the formula provided in Rule 167.4(d) will prevent the appellants' awards from being completely offset by litigation costs. Therefore, the appellants were the successful parties, and they are entitled to recover taxable costs under Rule 131. We further note, however, that the appellants may not recover taxable costs for any costs incurred after the date they rejected Spearman's settlement offer. *See* TEX.R. CIV. P. 167.4(f). We sustain the appellants' fifth issue.

In conclusion, we overrule issues one through three. We sustain issues four and five; therefore, we reverse the trial court's

judgment, as it fails to properly calculate each appellant's net award. We remand the case to the trial court for the limited purpose of recalculating the judgment by attributing the negligence of the "Pilot in Command" to Willis and rendering judgment on the jury verdict. The trial court shall then calculate the net judgment after determining the amount to award the appellees for their litigation costs. We further order the trial court to award the appellants their taxable costs, as limited by Rule 167.4(f), as each appellant was successful at trial. Finally, we further affirm the trial court's judgment as to Innova Ventures, Inc.[33]

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

ages, and one-half of the economic damages to be awarded to the claimant in the judgment; minus
(2) the amount of any statutory or contractual liens in connection with the occurrences or incidents giving rise to the claim.
(e) *No double recovery permitted.* A party who is entitled to recover attorney fees and costs under another law may not recover those same attorney fees and costs as litigation costs under this rule.
(f) *Limitation on attorney fees and costs recovered by a party against whom litigation costs are awarded.* A party against whom litigation costs are awarded may not recover attorney fees and costs under another law incurred after the date the party rejected the settlement offer made the basis of the award.
(g) *Litigation costs to be awarded to defendant as a setoff.* Litigation costs awarded to a defendant must be made a setoff to the claimant's judgment against the defendant.

32. Although not entirely clear from the trial court's judgment, it appears the trial court possibly erred by utilizing the $250,000.00 received by the appellees in a pre-trial settlement as an offset to the appellants' net award. Since we have reversed the judgment and remanded the case to the trial court to recalculate each appellant's net award, we need not further address the proper manner of calculating the net amount to be awarded each appellant in the trial court's future judgment.

33. When the appellants completed the presentation of their case, the trial court granted Innova Venture's motion for directed verdict. Subsequently, the trial court submitted no issues to the jury with respect to the appellants' claims against Innova Ventures. The appellants have advanced no issue on appeal concerning the trial court's failure to submit jury issues on their claims against Innova Ventures.