

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00061-CV

**MICHELLE MCMANUS,**

                                                          **Appellant**

 **v.**

**SHEILA RICHEY, INDIVIDUALLY, AS NEXT
FRIEND OF T.R., A MINOR, AND AS
INDEPENDENT EXECUTRIX OF THE
ESTATE OF GEORGE RICHEY,**

                                                          **Appellee**

---

**From the 12th District Court
Madison County, Texas
Trial Court No. 15-14136-012-02**

---

## MEMORANDUM OPINION

In two issues, appellant, Michelle McManus, challenges the trial court's denial of

her motion to dismiss brought under Chapter 27 of the Texas Civil Practice and Remedies

Code—the Texas Citizens Participation Act ("TCPA"). *See* TEX. CIV. PRAC. & REM. CODE

ANN. § 27.001-.011 (West 2015). Specifically, McManus contends that the claims brought

by appellee, Sheila Richey, individually, and as next friend of T.R., a minor, and as

independent executrix of the estate of George Richey, were based on her exercise of the rights of free speech and association and, thus, were subject to dismissal under Section 27.003 of the Texas Civil Practice and Remedies Code. *See id.* § 27.003. Additionally, McManus alleges that Sheila's claims should have been dismissed with an award of fees, costs, and sanctions because Sheila purportedly did not establish by clear and specific evidence a prima-facie case for each essential element of her claims. Because we conclude that Sheila is a limited-purpose public figure and, thus, Chapter 27 applies, and because appellate courts are limited to reviewing the findings of the trial court, we reverse and remand.

## I. BACKGROUND

Here, Sheila sued numerous people, including McManus, over allegedly libelous comments made on the internet that were critical of Sheila.[1] Sheila asserted that McManus made numerous defamatory comments on numerous websites, including Facebook, on a GoFundMe account, and the webpage for the Madisonville Meteor. Many of McManus's comments referenced the loss of Tammy Wynette memorabilia after a fire at Sheila's house. Among McManus's many comments was the following:

> What a horrible shame to have lost so many irreplaceable items belonging to Tammy Wynette and George Jones. Of course if Sheila Richey had possessed even an ounce of compassion. She would have returned all of these items to Tammy's daughters a long time ago. How a person can stoop so low as to manipulate and steal the daughter's inheritance is beyond

---

[1] The record reflects that Sheila is the widow of George Richey. George was the widower of Virginia Wynette Pugh, better known as country music legend Tammy Wynette.

comprehension. What drives someone to have a lack of empathy and conscience? Could it have been greed? Surely Karma is calling! What a blessing that Sheila's daughter was spending the night at a friends house, the dog was at the Groomer and the Rolls Royce was at a Garage being worked on. "Bless her heart," she only had the time to throw on Tammy's fur and jewelry before escaping . . . .

If you want to be benevolent why not give to a truly needy, deserving cause! This Woman has millions stashed away that she unjustly took from Tammy's kids and Grandkids.

McManus also posted a photograph of the ruins of Sheila's home on Facebook with an image of Tammy Wynette superimposed over it and with the caption, "Karma's a Bitch!"

Sheila also alleged that, in addition to numerous defamatory statements made on the internet, McManus also sent her a letter dated March 5, 2015, which mirrors many of the statements made on various websites.[2] According to Sheila, in the letter, McManus accused Sheila of stealing Tammy Wynette's possessions and burning down her own home. The letter further stated that Sheila is a "compassionless slut"; that "we have people in this ugly town who hate you as much as we do"; and that it was the writer's and others' intent to "make [Sheila's] life hell." The letter concluded with a warning that Tammy's daughters "are coming after you" and that "[w]e are right behind them."

Upon discovering McManus's comments, Sheila sent a letter on May 22, 2015, requesting that McManus clarify, correct, or retract her statements on the internet. McManus purportedly posted a clarification and apology on two different Facebook

---

[2] McManus claims that she has no recollection of writing the letter.

pages, acknowledging that the matters referenced in her postings were not within her personal knowledge, but rather based on information received from others. McManus also notified members on a Facebook page dedicated to Tammy Wynette and George Jones, for which she was an administrator, that postings critical of Sheila would be deleted and posters would be blocked. McManus then sent notice to Sheila's counsel confirming that she had complied with the request made on May 22, 2015.

Thereafter, on September 4, 2015, Sheila filed suit against McManus and numerous others, asserting claims for libel, intentional infliction of emotional distress, and conspiracy. McManus filed an answer, generally denying the allegations contained in Sheila's original petition. McManus also made numerous assertions herself, including the following: (1) Sheila's claims are not defamatory as a matter of law; (2) the publication complained of is privileged; (3) the complained-of publication is true or substantially true; (4) the publication contains some evaluative opinion and/or rhetorical hyperbole that does not state or imply verifiable fact and, thus, is not actionable; (5) Sheila is a public figure; (6) McManus's comments were not made with actual malice; (7) Sheila is barred from recovery by the doctrine of no incremental harm; and (8) Sheila cannot recover exemplary damages under section 73.059 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.059 (West Supp. 2015). Additionally, McManus pleaded for the mitigation of damages under section 73.003 of the Texas Civil Practice and Remedies Code. *See id.* § 73.003 (West 2011).

Subsequently, McManus filed a motion to dismiss Sheila's claims against her under section 27.003 of the TCPA. *See id.* § 27.003. Specifically, McManus alleged that Sheila's suit infringes on McManus's exercise of her rights of free speech and association and that Sheila cannot produce clear and specific evidence on each essential element of her claims; thus, the claims should be dismissed under section 27.003. *See id.*

The trial court ultimately concluded that Sheila is not a public figure and that the TCPA does not apply to the claims asserted against McManus. Accordingly, the trial court denied McManus's motion to dismiss. This accelerated, interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12) (West Supp. 2015); *see also* TEX. R. APP. P. 28.1(a).

## II.     MCMANUS'S MOTION TO DISMISS

### A.     Standard of Review

We review de novo a trial court's ruling on a motion to dismiss pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code. *See Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *see also Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.).

### B.     Whether the Claims Fall Under Chapter 27

Chapter 27 of the Texas Civil Practice and Remedies Code allows parties to seek dismissal of certain types of claims filed against them unless the opposing party presents prima-facie evidence of each element of those claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a), 27.005(b)-(c). This involves a two-step process. *See, e.g., Fawcett v. Rogers*, No. 01-15-00121-CV, 2016 Tex. App. LEXIS 3175, at *6 (Tex. App.—Houston [1st Dist.] Mar. 29, 2016, no pet.) (op. on reh'g) (citing Prather & Bland, *Bullies Beware: Safeguarding Constitutional Rights Through Anti-SLAPP in Texas*, 47 TEX. TECH. L. REV. 725, 750-53 (2015)). Initially, as it applies in this case, the moving party must show "that the legal action is based on, relates to, or is in response to the party's exercise of . . . the right of free speech . . . or the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)(1), (3).

If the movant establishes that the claims against her fall within the scope of Chapter 27, the burden shifts to the non-movant to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). In reviewing the evidence, the trial court "shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). While the requirement that prima-facie proof be established by clear and specific evidence "demands more information about the underlying claim, the Act does not impose an elevated evidentiary standard or categorically reject circumstantial evidence." *In re Lipsky*, 460 S.W.3d 579, 591 (Tex. 2015). For a defamation

claim, "pleadings and evidence that establish the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Id.*

Sheila brought defamation claims against McManus. The elements for a defamation claim are "(1) the publication of a . . . statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *Id.* at 593 (citing *McLemore*, 978 S.W.2d at 571). In any event, McManus argues that the defamation claims relate to her exercise of the right of free speech and association. As noted earlier, a legal action that "is based on, relates to, or is in response to a party's exercise of . . . the right of free speech . . . or the right of association" falls within the protections of Chapter 27. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a); *accord id.* § 27.005(b)(1), (3). "'Exercise of the right of association' means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2). Moreover, "'[e]xercise of the right of free speech' means a communication made in connection with a matter of public concern." *Id.* § 27.001(3). Matters of public concern include issues related to health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace. *Id.* § 27.001(7). Here, the parties disagree about whether Sheila is a public figure.

Chapter 27 does not define a public figure; however, the Texas Supreme Court has categorized public figures as being either (1) all-purpose, or general-purpose, public figures, or (2) limited-purpose public figures. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). General-purpose public figures are those individuals who have achieved such pervasive fame and notoriety that they become public figures for all purposes and in all contexts. *Id.* (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974)). Limited-purpose public figures are only public figures for a limited range of issues surrounding a public controversy. *Id.* McManus contends that Sheila is a limited-purpose public figure.

To be a limited-purpose public figure, the record must show: (1) there is a public issue "both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution"; (2) the plaintiff has more than a trivial or tangential role in the issue; and (3) the alleged defamation is germane to the plaintiff's participation in this issue. *Neely v. Wilson*, 418 S.W.3d 52, 70 (Tex. 2013). It is "exceedingly rare" for an individual to become a public figure involuntarily. *Id.* at 71 (citing *Gertz*, 418 U.S. at 345, 94 S. Ct. at 3009). Rather, limited-purpose public figures are those that "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz*, 418 U.S. at 345, 94 S. Ct. at 2009.

In an affidavit attached to her motion to dismiss, McManus asserts that this dispute centers on the will of Tammy Wynette and the "lack of inheritance received by her daughters."[3] With respect to Sheila's status as a public figure, McManus notes the following:

> In following matters related to Tammy Wynette over many years, I have become familiar with Plaintiff Sheila Slaughter Richey's public profile. Until fairly recently, Ms. Richey kept a very prominent public profile and was frequently involved in matters concerning Ms. Wynette, including publicity surrounding the ongoing controversy over Ms. Wynette's will. For example, in the ID [Investigation Discovery] television network program discussed above, Ms. Richey is prominently featured and makes many statements regarding her conduct, and that of George Richey, in connection with the controversy. In that program, Ms. Richey is shown making the following statements, among others, which I have confirmed by re-watching the program on YouTube:
>
> > [George] Richey later told me that they [Ms. Wynette's daughters] had been told that they were going to get, you know, a life insurance policy. But I know from my own experience, I mean, I've changed my own personal life insurance many times. So, Tammy probably decided to change it. [At approximately 20:25-20:45 in the YouTube link given above]
> >
> > They weren't just Tammy Wynette's riches. They were George Richey and Tammy Wynette's riches. They built it together. George Richey was a wildly successful music executive, he was president of Capitol Records. I mean, you just couldn't get or find a better producer or writer, piano player. He was as equal to her. So to say George Richey wanted Tammy's riches is a total insult, and you can see that's not the way it really was. [At approximately 21:23-21:58]

---

[3] One of Tammy Wynette's greatest hits was "Stand By Your Man," *see* Billboard.com, Tammy Wynette: Chart History, http://www.billboard.com/artist/281500/tammy-wynette/chart (last visited June 3, 2016); however, McManus notes that Tammy's daughters have asserted in various books and in the media that George and Sheila have not stood by them.

I know that there's been a lot of question of where was this list of things that Tammy wanted to give out. And he told me that she wrote them out, not daily, but constantly. She'd get mad at this kid and it would—you know, they would be scratched off. You get mad at this kid. I mean, she was constantly revising it. [At approximately 22:38-23:00]

[On her donating some of Tammy Wynette's items to the Country Music Hall of Fame:] Those items were not Tammy's girls' items. They were George Richey's. And he did not want them to end up on E-Bay. She was a member of the Country Music Hall of Fame, the highest honor that any artist could have. So why not have her things in an elegant, beautiful, honorable situation that where she could be safe? [At approximately 38:41-39:11]

Her will was carried out to the letter how she would have wanted it after what her children did to her after she died. I'm a very compassionate person. They've never reached out to me in kind. If they had, they would have gotten a very different response. [At approximately 41:58-42:18][4]

In response to McManus's motion to dismiss, Sheila executed her own affidavit,

wherein she averred:

8. In 2012, a producer for the IDTV show "The Will—Family Secrets Revealed" contacted me because they planned on an episode featuring Tammy Wynette's death and the aftermath involving the distribution of her estate. The producer wanted my participation. I did not want to participate in this program in any manner whatsoever and initially refused. However, it was represented to me that the show would be produced and would air with or without my input. In light of the prior hurtful accusations made against my deceased husband, I participated in the filming of the "The Will—Family Secrets Revealed" episode simply to answer questions. After filming my interview, I did not participate in any of the promotion of the

---

[4] The ID television network series described in McManus's affidavit is called "The Will: Family Secrets Revealed."

episode, including the Dr. Drew program cited in Defendant McManus's motion.

9. Prior to the Dr. Drew program, I was contacted by staff at the Dr. Drew show who requested my participation. I refused to participate beyond giving a very brief comment. I refused to appear on the show and also declined appearances on other television programs.

The above-mentioned evidence shows that Tammy's will and the disinheriting of Tammy's children is a public issue "both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution." *See Neely*, 418 S.W.3d at 70. Indeed, the purported defamatory comments made by McManus and others, as well as the numerous television shows and internet websites dedicated to this issue, illustrate that this issue has been highly publicized. Moreover, Sheila admitted to participating in the Investigation Discovery network show, entitled "The Will—Family Secrets Revealed," and the Dr. Drew show to discuss Tammy's will and the complaints made by Tammy's children. *See McLemore*, 978 S.W.2d at 573 ("'By publishing your views you invite public criticism and rebuttal; you enter voluntarily into one of the submarkets of ideas and opinions and consent therefore to the rough competition in the marketplace.'" (quoting *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996))); *see also Gertz*, 418 U.S. at 345, 351; *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 273 (3d Cir. 1980) (noting that public figures have "assumed the risk of potentially unfair criticism by entering into the public arena and engaging the public's attention"). Furthermore, the alleged defamatory comments made by McManus and

others directly relate to Sheila's involvement in the distribution and possession of the assets of the Tammy Wynette estate.

We conclude that the evidence demonstrates that Sheila is a limited-purpose public figure with regard to the issue at hand. *See Neely*, 418 S.W.3d at 70; *see also Einhorn v. LaChance*, 823 S.W.2d 405, 413 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.) (holding that pilots who flew for a hospital's air ambulance system and who had made statements to the press regarding a controversy over unionization were limited-purpose public figures). Moreover, we further conclude that the complained-of statements involved in this case pertain to matters of public concern that touch on the exercise of McManus's right of free speech and that McManus carried her burden of establishing that Chapter 27 applies. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001(3), (7), 27.003(a), 27.005(b)(1).

Nevertheless, the record reflects that the trial court denied McManus's motion to dismiss, specifically noting that "Plaintiff Sheila Richey is not a public figure and that Texas Civil Practice and Remedies Code Chapter 27 does not apply to the claims asserted by Plaintiffs against Defendant Michelle Reiber Wood McManus." Based on the foregoing, we conclude that the trial court erred in denying McManus's motion to dismiss on the grounds that Sheila is not a public figure and that Chapter 27 does not apply. *See Serafine*, 466 S.W.3d at 357; *John Moore Servs., Inc.*, 441 S.W.3d at 353; *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001(3), (7), 27.003(a), 27.005(b)(1). On the contrary, we

believe that Sheila is a limited-purpose public figure and that Chapter 27 does apply. We therefore sustain McManus's first issue on appeal.

## C. Prima-Facie Elements of the Defamation Claims

Ordinarily, as the second step in the analysis outlined in Chapter 27, we must analyze whether Sheila established by clear and specific evidence a prima-facie case for each essential element of the claim in question. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see also In re Lipsky*, 460 S.W.3d at 587. However, McManus admits, and the record reveals, that the trial court never reached the second step of the analysis because of the conclusions that Sheila is not a public figure and that Chapter 27 does not apply. Regardless, McManus urges us to make an independent determination that Sheila did not establish by clear and specific evidence the essential elements of her defamation claims.

It is well-established that courts of appeals are limited to reviewing findings made by trial courts and may not make affirmative findings. *See Tex. Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986) (per curiam); *City of Beaumont v. Graham*, 441 S.W.2d 829, 832-33 (Tex. 1969); *Duff v. Spearman*, 322 S.W.3d 869, 887 (Tex. App.—Beaumont 2010, pet. denied); *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 519 (Tex. App.—Fort Worth 2009, no pet.). We therefore decline McManus's invitation to make a determination as to whether Sheila established by clear and specific evidence the essential elements of her defamation claims. That determination should be made by the fact finder

in the trial court. *See Karnes*, 717 S.W.2d at 903; *Graham*, 441 S.W.2d at 832-33; *Duff*, 322 S.W.3d at 887; *AMX Enters., L.L.P.*, 283 S.W.3d at 519. Accordingly, we overrule McManus's second issue.

### III.    CONCLUSION

Because we have concluded that Sheila is a limited-purpose public figure and that Chapter 27 applies in this case, we reverse the trial court's denial of McManus's motion to dismiss and remand to the trial court to consider the second step in the Chapter 27 analysis—whether Sheila established by clear and specific evidence the essential elements of her claims against McManus.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
(Chief Justice Gray dissenting with a note)*
Reversed and remanded
Opinion delivered and filed July 27, 2016
[CV06]

*(Chief Justice Gray dissents. A separate opinion will not issue. He notes, however, that even if Sheila Richey meets some of the elements to be a limited-purpose public figure, of which he has grave doubts under first amendment jurisprudence, he finds no support for the proposition that the matter at issue is of public concern. Further, he cautions the parties on remand that Sheila Richey is present in this suit in three capacities and each must be addressed in any efforts to summarily and finally dispose of this proceeding.)

